IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No.: 1:22CR00075-001 |
| | : | The Honorable Michael S. Nachmanoff |
| AKSHAY RAM KANCHARLA | : | |
| Defendant. | : | |

<u>DEFENSE POSITION ON SENTENCING</u>

COMES NOW AKSHAY RAM KANCHARLA, Defendant in the above-styled case, by
and through Counsel, and hereby presents this Court with his position on sentencing.

On May 26, 2022, Akshay accepted responsibility for his actions by entering a pre-
indictment plea to a one-count Criminal Information charging him with Distribution of Fentanyl
in violation of 21 U.S.C. § 841(a)(1), thereby saving the government the time and expense of a trial.

According to his Amended Presentence Report, the probation officer calculated Akshay's
Offense Level at 36, his Criminal History Category as I, and his advisory guideline range as 188-
235 months. This advisory guideline range - for this crime, on these facts, and for this young man
- offends every rational notion of fairness, justice, and equity, and is proof positive that the
"advisory guidelines" have long outlived whatever marginal usefulness they may have once had.

The probation officer arrived at her conclusions regarding the advisory guidelines after
deciding that Akshay deserved a 4-level enhancement pursuant to USSG §2D1.1(b)(13) for
"*knowingly* misrepresenting" or "*knowingly* marketing" as another substance a mixture or
substance containing fentanyl (emphasis on "knowingly"). As will be set forth below, all the
evidence demonstrates that Akshay only intended to distribute oxycodone; neither wanted nor

intended to distribute fentanyl; played no role in manufacturing the pills in question; and had no knowledge that they contained anything other than oxycodone. This enhancement plainly does not apply.

The probation further applied a 2-level enhancement pursuant to USSG §2D1.1(b)(7) after concluding Akshay distributed the oxycodone pills via "mass-marketing by means of an interactive computer services." The Application Notes to pursuant to USSG §2D1.1(b)(7) make clear that this enhancement is intended to apply to those who exercise some degree of operational control over websites hosting the offers for sale, not those merely posting advertisements on said websites. Given the lack of controlling Fourth Circuit precedent on this issue, Your Honor should default to, and rely upon, the guidance provided by the Sentencing Commission and find that this enhancement does not apply.

Lastly, the probation decided that Akshay has not – despite all evidence to the contrary-clearly demonstrated acceptance of responsibility pursuant to USSG § 3E1.1 because - four months ago - he was found in violation of the terms of his pretrial release. The probation officer can only have reached her conclusion by ignoring what is obvious to everyone otherwise involved in this case: Akshay's preindictment plea; his admission of his guilt in its entirety; his satisfaction of the Safety Valve requirements; his agreement to forfeit the proceeds from his activities; and his personal letter to the probation officer expressing- in no uncertain terms- his deep and abiding sense of regret, remorse and contrition.

Accordingly, Your Honor should find that Akshay's Offense Level is correctly calculated at level 27 (not level 36), his Criminal History Category is I, and his advisory guideline range is 70-87 months.

Even this correct advisory guideline range, however, dramatically overstates the seriousness of this particular offense, committed by this particular individual. As will be set forth below:

- Akshay has been battling Post Traumatic Stress Disorder and severe depression for the last ten years of his, including the time period in question;

- He had been self-medicating on a daily basis with heavy doses of marijuana, in addition to ingesting various anti-depressants in an attempt to manage his worsening mental health;

- He has no criminal history of which to speak;

- The offense conduct spanned only a few months;

- He was essentially operating as a middle-man, reselling what he thought to be oxycodone pills that he purchased online from someone he never met;

- He only intended to distribute oxycodone, never fentanyl;

- Akshay neither asked for, nor paid for, the overwhelming majority of pills found in his possession, as they were mailed to him by mistake and without his request;

- There is no evidence establishing the quantity, quality, strength or purity of the fentanyl found in the oxycodone pills- only that some amount, however insignificant, was present; and

- He has completely and unequivocally accepted responsibility for his actions.

Given all of this, a sentence of 24 months is sufficient and no great that necessary to achieve the goals of § 3553.

I.      PERSONAL BACKGROUND

Akshay Kancharla was born on August 18th, 1995 in Tampa, Florida and was raised in a conservative and traditional Indian family and community. When he was younger, Akshay was active in sports, a good student, and a regular participant in the charitable activities of his family's religious community, where he regularly volunteered at food pantries and worked with disabled children.

Things began to change for Akshay around the time he began high school, and not for the better. As the Court will see from the Amended Presentence Report, the stability of Akshay's home life deteriorated significantly, to the point that he began suffering from severe anxiety and depression. He began self-medicating with heavy and daily usage of marijuana and was ultimately diagnosed with Post-Traumatic Stress Disorder. He was later prescribed Xanax, Klonopin, Prozac, Lexapro, Zoloft, Mirtazapine and is currently taking Remoron (30mg) to manage his depression and PTSD.

Akshay graduated from high school and attended college for a time but performed so poorly that he was placed on academic probation before ultimately being dismissed from school and returning to live with his parents.

As Akshay related during his interview with United States Probation Office, in the months leading up to his arrest, he was using marijuana "all day, every day" just to cope with his PTSD, severe depression and anxiety. He was also abusing Xanax and promethazine with codeine cough syrup, only stopping after a suspected overdose.

This is where Akshay was- both mentally and emotionally- during the several month period described in the plea agreement and statement of facts that constitute the behavior which brings

him before Your Honor for sentencing: a 26 year old man whose life was in shambles, back living with parents, suffering from serious mental health conditions, and managing his mental health as best he could by self-medicating.

## II.     OFFENSE CONDUCT

As set forth in his plea agreement and statement of facts, which Akshay has accepted in their entirety, Akshay was reselling oxycodone, resin, Xanax, and Adderall online. The scheme, such as it was, was not particularly well thought out or orchestrated. Essentially, Akshay purchased prepackaged M-30 oxycodone pills from a person online and then resold them to users, providing this unknown supplier with the *actual* home address where he lived with his parents. Akshay never met the person supplying the pills and had no part in their creation or manufacture.

Having never done something like this before- and having no real idea how to begin- Akshay essentially plagiarized the text from others selling oxycodone online, "copying and paste-ing" the following language into his advert:

"THESE M30 BLUES ARE VERY POTENT! PLEASE START WITH A SMALL DOSAGE BEFORE WORKING YOUR WAY UP PLEASE! Even if you think your tolerance is high. These are smokable, snortable, injectable and everything in between."

Akshay, who has never used oxycodone and certainly never tested the pills he received, had no idea whether these statements were in fact true. He simply read what others had written in their postings when selling oxycodone and copied their language into his own.

Moreover, Akshay had no pre-existing customers for his oxycodone pills, with the investigating agents ultimately became one of his bigger "customers". His online supplier was also so erratic, unreliable and unpredictable that he sent Akshay oxycodone pills he never requested, in amounts he had no hope of ever being able to sell. Specifically, in November, barely a month after Akshay began selling, his supplier- on his own initiative- sent Akshay 5000 vacuum sealed oxycodone pills. Then, a few weeks later, his supplier sent him another package, this one containing two vacuum sealed packages, each containing an additional 5000 oxycodone pills. All told, Akshay's supplier sent him 15000 pills completely unsolicited, pills which Akshay never requested, had no hope of ever selling, and for which he had no ability to pay. This is why the agents found so many unsold pills when they executed the search warrant on Akshay's home and why Akshay's drug weight is so high in the instant case.

And it cannot be overlooked that Akshay always intended to sell oxycodone- never fentanyl- and it was only after the government sent the seized pills for analysis that it determined that the pills contained a detectable amount of fentanyl. There is no indication of the amount, quantity, quality, strength or purity of the fentanyl found in the pills- only that some amount, however insignificant, was present. As a result, Akshay- who never advertised or intended to sell fentanyl- was charged with distributing "a mixture and substance containing a detectable amount" of fentanyl, rather than oxycodone.

When arrested in Tampa for having shipped pills to Northern Virginia, Akshay admitted his guilt, essentially giving a full confession. Akshay appeared before a magistrate judge in Tampa and was released with the standard conditions, among them being that he break no laws and be of uniform good behavior. Feeling an immense amount of pressure to send his supplier whatever

money he could scrape together- if only to protect his family from the supplier who knew exactly where Akshay and his family lived- he compounded his problems by pretending to sell the oxycodone pills he no longer possessed (as they had all been seized by the FBI) to anyone willing to pay for them up front. This ruse was so ill-conceived that the intended victims of his fraud were the same FBI agents who had originally investigated and arrested him.

On March 3, the Magistrate Judge in Tampa, Florida revoked Akshay's pretrial release and remanded him to the custody of the United States Marshal, thus beginning his traumatic and erratic transfer to this Court.

Akshay was first held in the maximum-security wing of the local Tampa jail where he shared a cell with 7 other people, all charged with serious violent felonies. Akshay was forced to sleep on the floor of the cell, without a mattress or blanket, and was in constant fear for his safety.

Things were even worse in Oklahoma where he was held in a communal unit with 45 other inmates, many of them violent offenders, all of whom were expected to use one toilet, one shower and the one working sink. All told, Akshay spent approximately 45 days in transit from Tampa to Alexandria in degrading and humiliating conditions.

Since his arrival at the ADC, he has been a model inmate, has regained nearly 25 pounds of the weight he lost, is consistently taking medication to control his PTSD and anxiety, and is thinking clearly for the first time, in a very long time.

III.     OBJECTIONS TO THE GUIDELINE CALCULATIONS

Counsel is cognizant that by objecting to these calculations he risks breathing life into- and possibly legitimizing- the guideline calculations themselves. That being said, the law does still require Your Honor to calculate the advisory guideline range, *Gall v. United States*, 552 U.S. 38, 49 (2007) as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v United States,* 552 U.S. 85, 90 (2007). Accordingly, Akshay's objections to the calculations are set forth below, though the Court should give the guidelines themselves only whatever minimal consideration the law requires.

A. <u>Akshay did not knowingly misrepresent or market as another substance a mixture or substance containing fentanyl</u>

The probation officer applied a 4-level increase to Akshay's offense level pursuant to USSG §2D1.1(b)(13) because she determined, without evidence, that Akshay "knowingly" misrepresented or "knowingly" marketed the pills as containing oxycodone, when he in fact knew they contained fentanyl. Not suspected they contained fentanyl, not surmised they contained fentanyl, not guessed they might contain fentanyl- but actually *knew* they contained fentanyl.

As an initial matter, there is literally nothing in the Amended Presentence Report supporting this enhancement and the probation officer makes no argument to support her conclusions that Akshay acted "knowingly" in regards to the actual content of the oxycodone pills. Instead, she merely recites it as fact, elevates Akshay's offense level from 32 to 36, and increases the low end of his advisory range by 67 months. 67 months is roughly 5.5 years and it happened in the space of one sentence, in one paragraph, with no explanation of any kind.

While there is no Application Note for USSG § 2D1.1(b)(13), Oxford's Dictionary defines "knowingly" as "in a way that suggests one has secret knowledge or awareness" and "in full awareness or consciousness; deliberately." Black's Law Dictionary similarly defines "knowingly" as "[w]ith knowledge; consciously; intelligently; willfully; intentionally. An individual acts 'knowingly' when he acts with awareness of the nature of his conduct." This, then, is the appropriate manner in which to understand the knowledge prerequisite contained in § 2D1.1(b)(13).

In its Memo, the government points this Court to a statement Akshay is reported to have made on February 17, 2022 at the time of his arrest: he "never tested the pills for fentanyl . . ." but "thought they probably had fentanyl in them because it was common for fake oxycodone to have fentanyl in them."

Firstly, the Court must understand and appreciate the context in which Akshay's interrogation unfolded: he was interrogated for several hours after approximately 10 armed agents in tactical gear- screaming, yelling and brandishing fully loaded assault rifles- burst into his home, placed his entire family in handcuffs, and forced them all of them outside. Once outside, the Kancharlas saw that the agents had blockaded their entire street and had parked 3 to 4 police vehicles in their driveway and an additional 5-6 vehicles on the street, all with sirens blaring.

This would have been a traumatizing event for anyone, but especially for Akshay given his PTSD and severe anxiety, and assuredly affected his ability to understand the questions put to him.

Akshay's memory of his statement to the agents is also somewhat different. Akshay remembers telling the agents that he began to suspect that the pills might contain fentanyl only near the very end, and only after reading something about it online. Because the various

investigative agencies steadfastly and deliberately refuse to record investigative interviews, there is no way for this Court to independently determine what Akshay actually said at the time of his arrest and interrogation and the manner in which he said it. The reality is that investigating agents are no more immune from mishearing, misremembering, or misunderstanding than the rest of us. Accordingly, unless and until the various investigative agencies opt to make use of recording technology readily available and accessible to the average 10-year old with a smart phone, the Court should look on such reports with a degree of caution.

But even if Akshay did say "probably" rather than "suspected", neither can possibly be understood to mean "knowingly". Accordingly, even giving the government every benefit of the doubt- in contravention of the Rule of Lenity and in opposition to the most fundamental principle in criminal law- this enhancement does not, and cannot, apply.

B. <u>The enhancement for distributing a controlled substance through mass-marketing by means of an interactive computer services does not apply</u>

The probation officer also applied a 2-level increase to Akshay's offense level pursuant to USSG §2D1.1(b)(7) after determining that Akshay distributed the oxycodone pills by means of mass-marketing.

Unlike USSG §2D1.1(b)(13), there is an Application Note for USSG §2D1.1(b)(7) which reads, as is relevant:

> "For example, subsection (b)(7) would apply to a defendant who operated a web site to promote the sale of Gamma-hydroxybutyric Acid (GHB) . . ."

There is no dispute that Akshay was not the operator of the website on which he offered the oxycodone pills for sale, as contemplated in the above Application Note. According to the official guidance provided by the United States Sentencing Commission, then, this enhancement does not apply to Akshay.

In contrast, the government and probation officer are asking this Court to adopt an expansive reading of this enhancement so that it applies to anyone who merely advertises on the Web, like Akshay, rather than to those who exert some form of operational control over the websites themselves.

Again, the probation officer makes no argument in support of her conclusion that this enhancement should apply; she simply finds the enhancement applies and raises Akshay's advisory guideline accordingly.

The government, for its part, has directed Your Honor to a few cases from the Ninth and Fifth Circuits which found no "clear error" or "abuse of discretion" in applying the enhancement to those who merely advertise on the Web. Perhaps the most pertinent case, however, is *United States v. Hanny*, 509 F.3d 916 (8th Cir. 2007), which affirmed application of the enhancement where the defendant doctor approved prescription drug requests for an internet pharmacy without reviewing customer medical records. ("We do not find the Guidelines ambiguous . . . . The notes clearly state that [the subsection] applies to a defendant who 'operated a web site to promote the sale' of a controlled substance.").

Undersigned Counsel is unaware of any controlling Fourth Circuit case law on the matter, as, it would appear, is the government. Accordingly, Your Honor should default to, and rely upon, the guidance provided by the Sentencing Commission in the relevant Application Note: this

enhancement is designed to target those with some degree of operational control over a website promoting the sale of narcotics. Again, as it is undisputed that Akshay had no operational control of the website on which he advertised, this enhancement does not apply.

C.  Akshay has completely and unequivocally accepted responsibility

As noted above, the probation officer concluded that Akshay has not – despite all evidence to the contrary- accepted responsibility for his actions. As Your Honor is aware, Akshay entered a preindictment plea to a Criminal Information; admitted his guilt in its entirety; has met all the requirements for the Safety Valve; has agreed to forfeit the proceeds from his activities; and expressed to the probation officer - in no uncertain terms- his deep and abiding sense of regret, remorse and contrition for what he has done. Undersigned Counsel is at a loss as to what more Akshay could have done to "clearly demonstrate" he has accepted full and complete responsibility. *See* USSG § 3E1.1

Apparently, though, this is not enough because four months ago Akshay was found in violation of the terms of his pretrial release and remanded. If the Court were to adopt the probation officer's reasoning in this regard, no defendant who violates the terms of his pretrial release could ever accept responsibility pursuant to USSG § 3E1.1, irrespective of the time lapse between the violation and the conclusion of his or her case. This is clearly not the law and undermines the essential purposes of USSG § 3E1.1.

There are surely situations in which a defendant who has pleaded guilty can nevertheless fail to clearly demonstrate his acceptance of responsibility. This, however, is not that case and it's not even close.

IV.    SENTENCING FRAMEWORK

While this Court must still correctly calculate the guideline range, it may not treat that range as mandatory or otherwise dispositive. Indeed, the Court "may not presume that the Guidelines range is reasonable" nor that the appropriate sentence will come from the guideline range. *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 at 594, 596-97 (2007); *Nelson v. United States*, 555 U.S. 350 (2009); *United States v. Mendoza-Mendoza*, 597 F.3d 212 (4th Cir. 2010). Rather, Your Honor must treat any advisory guideline range as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v United States,* 552 U.S. 85, 90 (2007).

Further, a key component of Supreme Court jurisprudence, designed to ensure that the guidelines are truly advisory and constitutional, is the authority of this Court to disagree with a guideline sentence based solely on an assessment that such a sentence itself fails to properly reflect the § 3553(a) considerations. *Kimbrough*, 552 U.S. at 101-02 (internal punctuation omitted) (citing *Rita v. United States*, 551 U.S. 338, 351 (2007). *See also Vazquez v. United States*, 130 S. Ct. 1135 (2010), ("all guidelines . . . are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under Section 3553(a)"). Accordingly, the Court does not need to point to extraordinary circumstances to justify a sentence outside of the guidelines and may provide a sentence outside of any advisory guideline if it feels the case warrants a different sentence. *See Rita supra.*

In short, in every case, the district court must consider the 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the

goals of sentencing. Imposition of a sentence is not, after all, merely a mathematical exercise- it is a matter of judgment. *See United States v. Biheiri*, 356 F.Supp.2d 589 (E.D.Va.2005.)

### V.     24 MONTHS IS SUFFICIENT BUT NOT GREATER THAN NECESSARY

The government's request for an 87-month sentence is predicated, in large part, on (1) the need to specifically deter Akshay from breaking the law again; and (2) properly reflecting the seriousness of fentanyl-related crimes.

Attached to this Memo are more than 20 letters from highly respected members of the community speaking out on behalf of Akshay and the person they know him to be and the person he can become again. These letters are from CEOs, Deans of Universities, physicians, mental health professionals, religious and community leaders, attorneys, senior business executives, long-time neighbors, and close family friends who have known Akshay his whole life and can speak to his character and prospects for rehabilitation. They all describe a kind, giving, compassionate, conscientious, and spiritual young man whose actions in this case are aberrational in every sense of the word. Each one firmly believes that Akshay has been a valued and trusted member of the community in the past and will be so again when he is returned to them. Given all this Court now knows about Akshay's background, personal situation, and individual struggles at the time he committed this offense, Your Honor should feel quite comfortable concluding that Akshay will never run afoul of the law again.

While the government is quite right that fentanyl is a serious societal problem that has the potential to destroy families, homes, and communities, it is important to be mindful that all the evidence in this case points to the fact that Akshay only intended to distribute oxycodone, and

never intended to distribute fentanyl. With all due respect to the government, every posting, text or other communication references oxycodone and never references fentanyl. Moreover, as mentioned above, Akshay played no role in manufacturing the pills and never requested the overwhelming majority of the pills found in his possession. Lastly, there is no evidence establishing the quantity, quality, strength or purity of the fentanyl found in the oxycodone pills at issue- only that some amount, however insignificant, was present.

In short, there is little utility or justice in punishing Akshay- who never intended to distribute fentanyl- as means of sending a message of general deterrence to actual fentanyl distributors. By doing so, courts risk falling into the trap of treating the fentanyl epidemic the same way in which courts historically treated the burgeoning crack cocaine crisis, where the mere presence of crack cocaine residue often resulted in excessively long sentences, regardless of the intentions of the individuals involved. 24 months for this young person, on these facts, and in this case is sufficient but no greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a).

## CONCLUSION

Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: "the court, in determining whether to impose a term of imprisonment, and if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation."

18 U.S.C. § 3553 (a) further provides that, in determining the appropriate sentence, the court should consider a number of factors, including "the nature and circumstances of the

offense," "the history and characteristics of the defendant," "the sentencing range established" by the Guidelines, "any pertinent policy statement" issued by the Sentencing Commission pursuant to its statutory authority, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Thus, while courts are to give respectful consideration to the Guidelines, district judges, in considering how the various statutory sentencing factors apply to an individual defendant and whether those factors support the sentence requested by a party, must consider each of these factors equally in imposing a punishment "not greater than necessary" to "lessen the likelihood of future crime" while providing the defendant with reasonable rehabilitative opportunities.

When these factors are taken consideration and applied to Akshay, in this case, and on these facts, we respectfully submit that a sentence of 24 months would be sufficient but no greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a).

Respectfully Submitted,

AKSHAY RAM KANCHARLA
By Counsel

_____/s/_____
CHRISTOPHER AMOLSCH
VSB #43800
12005 Sunrise Valley Drive
Suite 200
Reston, Virginia 20191
703.969.2214 (Phone)
chrisamolsch@yahoo.com (email)
Counsel for Akshay Kancharla

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of August, 2022 I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.

<u>/s/ Christopher Amolsch</u>
CHRISTOPHER AMOLSCH
VSB #43800
12005 Sunrise Valley Drive
Suite 200
Reston, Virginia 20191
703.969.22124 (Phone)
<u>chrisamolsch@yahoo.com</u> (email)
Counsel for Akshay Kancharla